IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GEORGE H. SERGENT,

                       Petitioner,                                OPINION AND ORDER

    v.

                                                    12-cv-810-slc

TIMOTHY DOUMA, Warden,
New Lisbon Correctional Institution,

                          Respondent.[1]

---

       State inmate George H. Sergent has  filed a petition for a writ of habeas corpus under 28

U.S.C. § 2254, challenging his conviction for attempted sexual assault, battery and disorderly

conduct in Green County Case No. 2006CF15.  (Dkt. 1, as amended by dkt. 28).  The state

filed an answer disputing each of Sergent's claims. (Dkts. 12, 13 & 31). Both sides have briefed

their positions. (Dkts. 2, 17 & 20).  On January 19, 2016, both parties consented to magistrate

judge jurisdiction, and the case was reassigned to me. (Dkts. 45-37).

       Having read the pleadings, the briefs and the records from the state court proceedings,

I conclude that Sergent has failed to establish that the state court of appeals unreasonably

applied federal law or made an unreasonable determination of fact when that court rejected his

claims and affirmed his convictions.  Accordingly, the court is dismissing the petition.

       As a corollary to this, I am affirming this court's preliminary decision (dkt. 22) to deny

Sergent's request (dkt. 19) for an evidentiary hearing.  *See* Section V., *infra* at 26.

---

[1]  The original respondent, Lizzie Tegels, no longer is warden of the state institution in which petitioner
is confined.  Her replacement, Timothy Douma, is substituted in her place pursuant to Fed. R. Civ. P.
25(d) and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

BACKGROUND

In Green County Case No. 2006CF15, the state charged Sergent with attempted second-degree sexual assault of an unconscious person in violation of Wis. Stat. § 940.225(2)(d); attempted third-degree sexual assault in violation of Wis. Stat. § 940.225(3); battery in violation of Wis. Stat. § 940.19; and disorderly conduct in violation of Wis. Stat. § 947.01.  These charges were based on allegations made by a woman who was asleep at Sergent's house after a night of drinking with her husband and Sergent.  The victim was intoxicated and went straight to bed while still wearing her clothes.  She awoke to find Sergent in the process of pulling off her pants.  When the victim resisted, Sergent slapped and punched her while cursing at her.  The victim was able to get away wearing only a shirt.

At trial, a jury found Sergent guilty of all four counts.  The circuit court imposed a total sentence of 17 years (seven years' imprisonment followed by a 10-year term of extended supervision) for the conviction of second degree attempted sexual assault of an unconscious person.  The punishment imposed in the other counts of conviction was concurrent to the sentence imposed in count one. [2]

The circuit court denied Sergent's motion for postconviction relief, the court of appeals affirmed his conviction, *see State v. Sergent*, 2012 WI App. 62, 341 Wis. 2d 489, 815 N.W.2d 406 (April 19, 2012) (unpublished), and the Wisconsin Supreme Court denied his petition for review. *See State v. Sergent*, 2010AP3136 (Sept. 28, 2012).

---

[2] On the charge of third-degree attempted sexual assault (count 2) Sergent was ordered confined to prison for 2 years followed by a 3-year term of extended supervision to be served concurrently with the punishment imposed on count 1.

Sergent then filed a motion to vacate his sentence, noting that the maximum sentence of extended supervision that he could receive for second degree attempted sexual assault of an unconscious person, a Class C felony, was 7.5 years. The circuit court denied the motion, but the Wisconsin Court of Appeals reversed, in part, noting that Sergent's 10-year term of extended supervision exceeded the maximum allowed. *See State v. Sergent*, 2013AP193-CR. On January 24, 2014, the excess portion of his sentence was vacated pursuant to Wis. Stat. § 973.13, adjusting Sergent's sentence to a total of 14.5 years (seven years' imprisonment followed by a term of 7.5 years' extended supervision).

In this court, Sergent contends that he is entitled to relief from his conviction under 28 U.S.C. § 2254 because he was denied effective assistance of counsel. Sergent contends that the attorney who represented him on post-conviction review and direct appeal was deficient for failing to raise these five grounds for relief: (1) Sergent was denied a fair trial by an impartial jury; (2) the evidence was insufficient to support Sergent's conviction for attempted second or third-degree sexual assault; (3) Sergent was denied effective assistance of counsel at trial; (4) Sergent's convictions for both attempted second *and* third-degree sexual assault violated the double jeopardy clause; and (5) Sergent was denied the right to counsel when the State amended the charging instrument. Sergent also contends that the circuit court erred by denying him an evidentiary hearing on his ineffective-assistance claims and that he is entitled to additional relief from his sentence.

The state responds that Sergent's claims are meritless and this court should deny his petition.

3

OPINION

## I.    Habeas Corpus Standard of Review

With the exception of Sergent's claim concerning his sentence, all of his asserted grounds for relief appear to have been adjudicated on their merits by the circuit court, the Wisconsin Court of Appeals and the Wisconsin Supreme Court, which summarily denied review.  When a state system issues multiple decisions, a federal habeas corpus court typically considers "the last reasoned opinion on the claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012) (unless a state court adopts or incorporates the reasoning of a prior opinion, 28 U.S.C. § 2254 requires federal courts to review one state decision) (citation omitted).  To the extent that the claim was addressed on the merits by a state court, it is Sergent's burden to establish that the court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The standard outlined in § 2254(d)(1) is exacting and "highly deferential," *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 15 (2013), demanding that state courts be given "the benefit of the doubt." *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011).  To prevail, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362,

404-08 (2000). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard authorizes relief only in cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S. Ct. at 786. In addition to the "formidable barrier" posed by this standard, *Titlow*, 134 S. Ct. at 16, the petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.    Ineffective Assistance of Counsel

Sergent maintains that he was denied effective assistance of counsel at trial, on post-conviction review and during his direct appeal. Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a petitioner generally must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

To demonstrate deficient performance, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial." *Id*. at 687. "This means identifying acts or omissions of counsel that could not be the result of

professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (internal quotation marks and citations omitted).  To demonstrate actual prejudice requires a defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The *Strickland* standard applies similarly to allegations of ineffective-assistance in connection with a defendant's direct appeal.  To establish that his appellate attorney's performance was deficient, a defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  In other words, a defendant must show that counsel unreasonably failed to discover non-frivolous issues and raise them. *Id.* If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.*

All of Sergent's ineffective-assistance claims were rejected in state court.  A review of the underlying decisions reflects that the state court accurately characterized Sergent's claims and identified the correct legal standard controlling his allegations of ineffective assistance.  Thus, the central question here is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable, a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)).  In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard." *Id.* (citing *Youngblood v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, this standard is "doubly deferential" on habeas corpus review. *Id.*; *see also Richter*, 131 S. Ct. at 788 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).  I will address Sergent's ineffective-assistance claims under this standard:

## A.    Impartial Jury

Sergent contends that the attorney who represented him on post-conviction review and direct appeal was deficient for failing to argue that he was denied a fair trial by an impartial jury. Sergent's basis for this contention is his claim that his trial attorney was ineffective because he did not seek to strike for cause a juror (Dawna Engleking) who was biased.

During *voir dire*, Engleking responded to the prosecutor's questions by revealing that she had "two sets of friends that have been arrested for domestic violence." (Dkt. # 13, *Voir Dire Transcript*, 6:47.)  When asked if there was "anything about their situation or what happened in their case" that she felt she could not set aside in Sergent's case, Engleking replied "I'm not sure." (*Id*. at 6:48.)  When asked further if she could set aside her emotions and knowledge of what happened to her friends, Engleking stated that she was "not totally sure if [she] [could] say yes or not." (*Id*.)  Engleking also said that she was "not sure" that her experience with having needed help after having had too much to drink was something that would affect her ability to decide the case based on the evidence. (*Id*. at 6:48-49.)  Sergent's lawyer did not pose any further questions to Engleking, who eventually served on the jury.  (*See id*. at 6:53-56, 6:76-77.)

The Wisconsin Court of Appeals rejected Sergent's ineffective-assistance claim after finding that Engleking's ambivalent answers during *voir dire* did not clearly demonstrate bias:

> "[A] criminal defendant's right to receive a fair trial by a panel of impartial jurors is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, § 7 of the Wisconsin Constitution, as well as [by] principles of due process." *State v. Faucher*, 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999). These constitutional protections are further codified by Wis. Stat. § 805.08(1), which provides that a potential juror who "has expressed or formed any opinion, or is aware of any bias or prejudice in the case" or who "is not indifferent in the case" shall be excused for cause.
>
> Wisconsin recognizes three categories of juror bias: (1) statutory bias based upon certain prohibited relationships or financial interests; (2) subjective bias based upon the juror's state of mind; and (3) objective bias based upon whether a reasonable person in the juror's position could be impartial. *See Faucher*, 227 Wis. 2d at 716–19, 596 N.W.2d 770. Jurors are presumed to be impartial, and a challenger to that presumption bears the burden of proving bias. *State v. Gilliam*, 2000 WI App 152, ¶ 5, 238 Wis. 2d 1, 615 N.W.2d 660.
>
> Statutory bias is not at issue in this case.
>
> Subjective bias may be revealed through an explicit admission of prejudice or, more commonly, through a juror's demeanor and credibility while answering questions on *voir dire*. *See Faucher*, 227 Wis. 2d at 717–18, 596 N.W.2d 770. A prospective juror need not utter magical words or unambiguously state his or her ability to set aside bias, and may even give contradictory answers to differently worded questions, and still be found by the trial court to be capable of impartiality based upon the entirety of the court's observations. *See State v. Jimmie R.R.*, 2000 WI App 5, ¶ 28, 232 Wis. 2d 138, 606 N.W.2d 196 (Ct. App. 1999).
>
> Objective bias may also be established based upon a juror's answers and conduct during *voir dire*, but the focus is on whether facts and circumstances reveal "such a close connection between the juror and the case" as to create a likelihood of an emotional involvement that would adversely affect the ability of any reasonable person to be impartial in such circumstances. *See State v. Delgado*, 223 Wis.

2d 270, 285–86, 588 N.W.2d 1 (1999) (analysis rephrased by this court to conform with current terminology); *see also State v. Lindell*, 2001 WI 108, ¶¶ 38, 46–48, 245 Wis. 2d 689, 629 N.W.2d 223 (explaining that *Delgado* was an objective bias case, even though *Delgado* predated the adoption of that terminology in *Faucher*).

In the context of an ineffective assistance of counsel claim, the issue is whether counsel's performance resulted in the actual seating of a biased juror. *State v. Koller*, 2001 WI App 253, ¶ 14, 248 Wis. 2d 259, 635 N.W.2d 838. To make this showing, Sergent would need to present evidence showing either that the record created during *voir dire* established sufficient subjective or objective bias to support a motion to strike for cause or that asking additional questions would have revealed such bias.

We are not persuaded that the juror's answers during *voir dire* demonstrated either subjective or objective bias. Her ambivalent answers as to whether she could set aside her feelings about the domestic violence situations involving her friends was insufficient to establish that she either could or could not be impartial in this case. Moreover, because the juror did not explain the circumstances of those cases, we have no basis to conclude that there was such a close connection between those cases and this one, so as to create an objective likelihood of an emotional involvement on the juror's part. In short, more information from follow-up questions would have been needed to support a bias determination.

Assuming for the sake of argument that counsel's failure to ask such follow-up questions constituted deficient performance, Sergent's postconviction motion still failed to make sufficient allegations to establish prejudice. Specifically, Sergent did not indicate what evidence he would present at an evidentiary hearing demonstrating the answers the juror would have given if follow-up questions had been asked. Therefore, it was merely speculative to assert that the juror was actually biased, *see id.*, ¶ 15, and the challenge was properly rejected without a hearing.

*State v. Sergent*, 2012 WI App 62, ¶¶ 8-15, 341 Wis. 2d 489, 815 N.W.2d 406.

As the state court noted, both the Fifth Amendment right to due process and the Sixth Amendment right to an impartial jury protect a defendant against juror bias. *United States v. Torres-Chavez*, 744 F.3d 988, 997 (7th Cir. 2014) (citing *Arreola v. Choudry*, 533 F.3d 601, 605 (7th Cir. 2008)).  These rights guarantee a jury "capable and willing to decide the case solely on the evidence before it," *Smith v. Phillips*, 455 U.S. 209, 217 (1982), and consistent with the trial court's instructions, *Morgan v. Illinois*, 504 U.S. 719, 728 (1992), as distinct from preconceived notions or extraneous influences.  In this context, there is a "critical difference" between a juror's personal beliefs and a bias that requires disqualification:

> Everyone brings to a case a set of beliefs that may incline him in one direction or another.  A person told that X had been indicted, and asked whether he thought X guilty, might reply that he thought X probably was guilty because few innocent people are indicted.  That would be a prior [belief]. It would be a bias only if it were irrational or unshakable, so that the prospective juror "would be unable to faithfully and impartially apply the law," *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S. Ct. 844, 83 L. Ed.2d 841 (1985) (emphasis added), would be, in other words, "adamant," *Fleenor v. Anderson*, 171 F.3d 1096, 1099 (7th Cir. 1999) — in our hypothetical if, for example, the person added, "Nothing will ever convince me that the government would indict an innocent person."

*Griffin v. Bell*, 694 F.3d 817, 824 (7th Cir. 2012) (quoting *Thompson v. Altheimer & Gray*, 248 F.3d 621, 625 (7th Cir. 2001)).

The record in this case contains no unequivocal or adamant expression of bias on Engleking's part.  Engleking never said that she could not be fair or that she would be unable to set aside her personal feelings and decide the case based on the evidence.  Nothing about Engleking's responses clearly indicated that she was biased against Sergent or had prejudged his guilt.  Under these circumstances, there was no obligation to inquire further.  *Cf. Oswald v. Bertrand*, 374 F.3d 475, 480 (7th Cir. 2004) (finding the trial judge's inquiry inadequate where

10

there was "a high probability that some, maybe all, of the jurors . . . were biased").  As a result, Sergent has failed to demonstrate that his trial attorney was deficient during jury selection, or that his lawyer on post-conviction or appellate review deficiently failed to raise this issue.

To the extent that trial counsel may be faulted for failing to ask follow-up questions regarding Engleking's personal beliefs, Sergent does not present any evidence showing that Engleking actually harbored bias against him or that additional questioning from his attorney would have uncovered evidence of actual bias. Without such evidence, Sergent has failed to establish that he was denied a trial before an impartial jury, or that his lawyer was ineffective for failing to challenge or strike Engleking. *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961) ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard."). Absent a showing of deficient performance by counsel or actual prejudice as a result, the state court's decision on this issue was not unreasonable.

## B.      Sufficiency of the Evidence

Sergent contends that the attorney who represented him on post-conviction review and direct appeal was deficient for failing to argue that the evidence was insufficient to support his conviction for attempted second or third-degree attempted sexual assault.  Let's start with a brief summary of the evidence presented at trial:

At trial, the victim ("M.F.") testified that she, her husband ("B.F.") and their children went to visit Sergent (who was B.F.'s cousin) one Saturday night in late November 2005.  (Dkt. 13, *Trial Transcript*, 7:27-28.)  After drinking some alcoholic beverages at Sergent's house, M.F.,

B.F. and Sergent decided to step out to a local bar.  They left the children at home in the care of Sergent's nephew, Daniel.  (*Id*. at 7:29-31.)  After visiting more than one bar that night, B.F. and Sergent brought M.F. back to Sergent's house because she was intoxicated.  (*Id*. at 7:30-31.) B.F. helped M.F. into bed and she fell asleep.  (*Id*. at 32.)  She was wearing a black dress shirt and blue jeans.  (*Id*. at 7:44.) B.F. and Sergent then returned to the bar and continued to drink. (*Id*. at 7:64.)  When they drove back to Sergent's house, Sergent left B.F. passed out in the truck.  (*Id*. at 7:64-66, 75.)

M.F. testified that the next thing she remembered was waking up sometime later to find that Sergent "was in the process of pulling [her] pants off."  (*Id*. at 7:32)  When M.F. began kicking and swearing at him, Sergent punched and slapped her in the face as he continued to removed her pants.  (*Id*. at 7:32-33, 45.)  M.F. kicked herself free and scrambled out of the bedroom clad only in her shirt.  (*Id*. at 7:33-34.)  Seeing that Daniel was awake, M.F. asked if he would get her pants and asked him if he knew where her husband was.  (*Id*. at 7:34.)

Daniel testified that he saw B.F. and Sergent bring M.F. home from the bar and put her to bed.  (Dkt. 13, 7:83-84.)  At around 1:45 or 1:30 a.m., Daniel woke up to hear screaming and yelling.  (*Id*. at 7:85.)  According to Daniel, Sergent was "butt naked" and swearing at M.F., whose face was bloody.  (*Id*. at 7:85, 91.)  Sergent then went into his room and put on a pair of boxer briefs.  (*Id*. at 7:85, 86.)  Sergent offered to drive Daniel home, but Daniel declined, noting that Sergent was "too drunk."  (*Id*. at 7:85.)  Daniel observed that M.F. was shaking and "crying really bad," so Daniel called his mother and asked her to come over.  (*Id*. at 7:87, 91.)

After arriving at Sergent's house, Daniel's mother, Jeannette, helped M.F. put her pants back on. (*Id*. at 7:88-89.) Jeannette testified that M.F. was upset and told her that Sergent "tried to have sex with [her]." (Id. at 7:102.) Jeanette called the police. (*Id*. at 7:89.)

The court of appeals found that the proof adduced at trial was sufficient to support the jury's verdict and that Sergent's counsel was not deficient for failing to challenge the sufficiency of the evidence:

> Sergent first argues that postconviction counsel should have challenged the sufficiency of the evidence because no jury, acting reasonably, could have found beyond a reasonable doubt that he had attempted an act of genital or anal intrusion based on the victim's testimony that when she went to bed she was fully clothed, and when she awoke Sergent was removing her pants.
>
> Attempted second- and third-degree sexual assault by sexual intercourse each require evidence that a defendant attempted vulvar penetration or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of another. *See State v. Wulff*, 207 Wis. 2d 143, 145, 557 N.W.2d 813 (1997); *see also* Wis. Stat. §§ 940.225(2)(d), 940.225(3), and 939.32 (2003–04).[] Proving an intent to attempt to commit a crime requires sufficient acts to demonstrate unequivocally that it was improbable the defendant would desist of his or her own free will. *State v. Stewart*, 143 Wis. 2d 28, 31, 420 N.W.2d 44 (1988). If there is only one reasonable answer regarding to what end a defendant's acts were directed, the accused can be said to have attempted to attain that end. *State v. Henthorn*, 218 Wis. 2d 526, 534, 581 N.W.2d 544 (Ct. App. 1998).
>
> We are satisfied that there was only one reasonable conclusion to be drawn regarding what end Sergent intended by entering the bedroom of a sleeping, intoxicated woman, pulling off her pants, and punching her when she struggled to get away. This is not a situation such as that in *Wulff*, where the victim awoke to find the defendant trying to force his penis into her mouth. The circumstances there plainly indicated an intent to force oral sex, and it was not possible to determine with certainty whether the intent was to have oral sex exclusively or in addition to also have intercourse. None of Sergent's conduct here indicated any attempt

13

> to force oral sex, and Sergent's removal of the victim's pants plainly focused on the victim's vaginal or anal areas. Therefore, counsel did not perform deficiently by failing to raise a challenge to the sufficiency of the evidence.

*Sergent*, 2012 WI App 62, ¶¶ 4-6, 341 Wis. 2d 489, 815 N.W.2d 406 (footnote omitted).

As the state court implicitly recognized, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On federal habeas corpus review of a state court conviction, a challenge to the legal sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the constitutional due process standard. This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Sergent argues that the evidence was not sufficient to support his conviction for attempted sexual assault because he was fully dressed during the incident and did not attempt to penetrate the victim. Daniel, however, testified that Sergent was naked shortly after the assault occurred. (Dkt. 13, *Trial Transcript*, 7:85.) Viewing the evidence in the light most favorable to the prosecution, a reasonable jury could have found that Sergent removed M.F.'s pants so that he could have sexual intercourse with her and that he punched her when she resisted, supporting the inference that he intended to sexually assault her. Based on this court's own review of the record, I conclude that a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. Sergent fails to show that the jury's verdict was unsupported by sufficient proof or that his counsel was deficient for failing to

14

challenge the sufficiency of the evidence.  Accordingly, Sergent is not entitled to relief on this claim.

### C.       Ineffective-Assistance at Trial — Jury Instructions

Sergent contends that the attorney who represented him on post-conviction review and direct appeal was deficient for failing to argue that he was denied effective assistance of counsel at trial.  Sergent claims that his trial counsel screwed up by requesting a jury instruction on voluntary intoxication. Sergent argues that there was no evidence to support the defense and that the instruction prejudiced his defense by implicitly admitting that he committed the acts underlying the charged offenses while drunk.

The court of appeals held that Sergent's trial attorney was not ineffective for requesting the jury instruction on voluntary intoxication, which is a proper defense to the intent element found in the attempted sexual assault charges.  *See State v. Sergent*, No. 2009AP689-CR, slip op. at 3 (citing Wis. Stat. § 939.32(3) (intent is an element of an attempted crime)).  The court of appeals held further that even if the defense was not legally available or supported by evidence, Sergent failed to show how presenting this defense made a guilty verdict more likely.  *See id*.

The defense of voluntary intoxication, set forth in Wis. Stat. § 939.42(2), applies where the "intoxicated or drugged condition of the actor . . . [n]egatives the existence of a state of mind essential to the crime[.]"  The "'intoxicated or drugged condition'" is "that degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime." *State v. Guiden*, 46 Wis. 2d 328, 331, 174 N.W.2d 488, 490 (1970). In order to qualify for a jury instruction on the voluntary intoxication defense, the defendant:

15

> must come forward with some evidence of the degree of intoxication which constitutes the defense. An abundance of evidence which does not meet the legal standard for the defense will not suffice. There must be some evidence that the defendant's mental faculties were so overcome by intoxicants that he was incapable of forming the intent requisite to the commission of the crime. A bald statement that the defendant had been drinking or was drunk is insufficient — insufficient not because it falls short of the quantum of evidence necessary, but because it is not evidence of the right thing.

*State v. Strege*, 116 Wis. 2d 477, 486, 343 N.W.2d 100, 105 (1984).

Contrary to Sergent's contention, there was ample evidence presented at trial in support of voluntary intoxication as a potential defense.  M.F. testified that Sergent was drunk on the night in question, that he had been doing shots and drinking beer "really fast."  (Dkt. 13, *Trial Transcript*, 7:41.)  B.F. testified that Sergent had been drinking before B.F. and M.F. arrived. (*Id*. at 7:59.)  B.F. said that he, Sergent, and M.F. went to two or three bars and Sergent had two to three drinks at each bar. (*Id*. at 7:70.) When Sergent and B.F. dropped M.F. off at Sergent's house, Sergent had more beer there. (*Id*. at 7:84.)  Sergent and B.F. then left the house and continued to drink. (*Id*. at 7:74.)  Upon returning to his house the second time, Sergent offered to take Daniel home.  However, Daniel refused, saying that Sergent was "too drunk." (*Id*. at 7:85-86.)  Sergent was "passed out" in his bedroom when police arrived. (*Id*. at 8:140.)  Moreover, when interviewed at the police station, Sergent told Green County Sheriff's Deputy Wade Engelhart that he "was extremely intoxicated when he arrived home" that night.  (*Id*. at 8:135-36.) Sergent also told police "there was a possibility that he could do something he did not remember." (*Id*. at 8:136.)

Counsel's decision to request a jury instruction on voluntary intoxication was a matter of trial strategy.  Strategic decisions made by counsel during the course of trial are entitled to

substantial deference in the hindsight of federal habeas review.  *See Strickland*, 466 U.S. at 689

(emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and

that "every effort [must] be made to eliminate the distorting effects of hindsight").  Because

there was sufficient evidence of Sergent's drunkenness to support intoxication as a potential

defense, Sergent has not shown that counsel's decision to request a jury instruction on voluntary

intoxication was deficient or that the state court's decision on this issue was unreasonable.


**D.    Double Jeopardy**

Sergent contends that the attorney who represented him on post-conviction review and

direct appeal was deficient for failing to argue that he was charged and convicted of both

attempted second and third-degree sexual assault in violation of the Double Jeopardy Clause.

Noting that the charges were distinct and not multiplicitous, the court of appeals concluded that

Sergent's counsel was not deficient for failing to raise a double jeopardy claim:

> Sergent contends that Counts 1 and 2 of the amended information
> charged the same attempted act of sexual intercourse in violation
> of the double jeopardy clause.
>
> The Fifth Amendment of the United States Constitution provides
> that no person shall "be subject for the same offence to be twice
> put in jeopardy of life or limb." U.S. Const. amend. V; *see also* Wis.
> Const. art. I, § 8(1). The double jeopardy clause includes three
> distinct constitutional guarantees: (1) protection against a second
> prosecution for the same offense after an acquittal; (2) protection
> against a second prosecution for the same offense after a
> conviction; and (3) protection against multiple punishments for
> the same offense. *State v. Henning*, 2004 WI 89, ¶ 16, 273 Wis. 2d
> 352, 681 N.W.2d 871.
>
> Multiplicity arises when a single criminal episode or course of
> conduct is charged as multiple counts rather than merged. *State v.
> Hirsch*, 140 Wis. 2d 468, 471, 410 N.W.2d 638 (Ct. App. 1987).

> Multiple punishments may not be imposed for charges that are identical in law and fact unless the legislature intended to impose such punishments. *State v. Patterson*, 2010 WI 130, ¶ 15, 329 Wis. 2d 599, 790 N.W.2d 909. Charges are different in fact if they are separated in time or place, require separate acts of volition within a course of conduct, or are otherwise of a significantly different nature. *See State v. Anderson*, 219 Wis. 2d 739, 748–49, 580 N.W.2d 329 (1998). Charges are different in law if each requires proof of an element that the other does not. *State v. Smits*, 2001 WI App 45, ¶ 7, 241 Wis. 2d 374, 626 N.W.2d 42.
>
> The charges here were not identical in either law or fact. Count 1 required proof that Sergent attempted to have sexual intercourse with a person whom he knew to be unconscious, and was based on Sergent's conduct in beginning to pull off the victim's pants while she was asleep. Count 2 required proof that Sergent attempted to have sexual intercourse with a person without her consent, and was based on Sergent's conduct in continuing to pull the victim's pants off and striking her after she awoke. Sergent could have backed off when the victim awoke and started struggling, but instead the jury was free to conclude that he made a second volitional decision to use force and continue pulling her pants off. Since the charges were not multiplicitous, counsel did not perform deficiently by failing to raise a double jeopardy claim.

*Sergent*, 2012 WI App 62, ¶¶ 19-22, 341 Wis. 2d 489, 815 N.W.2d 406.

An indictment that charges a single offense in more than one count is multiplicitous. *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995). Multiplicity in an indictment exposes a defendant to the threat of receiving multiple punishments for the same offense in violation of the Double Jeopardy Clause. *United States v. Starks*, 472 F.3d 466, 469 (7th Cir. 2006) (citations omitted). In that context, "a person may not be convicted and punished for two separate offenses arising out of the same act unless 'each [offense] requires proof of a fact which the other does not.'" *United States v. Mire*, 725 F.3d 665, 677 (7th Cir. 2013) (citing *United States v. Larsen*, 615 F.3d 780, 786 (7th Cir. 2010) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)); *see also United States v. Dixon*, 509 U.S. 688, 696 (1993). This

18

inquiry, also known as the *Blockburger* test, looks at the elements of the charged offenses: "[i]f each statute contains an element that the other does not, then the offenses are different. If one statute has an element missing from the second, but all of the second's elements are in the first, then the second is a lesser included offense of the first." *Mire*, 725 F.3d at 677-78 (quoting *United States v. Loniello*, 610 F.3d 488, 491 (7th Cir. 2010). Only in the latter situation is the Double Jeopardy Clause violated. *Id.*

To determine whether a charging instrument contains multiplicitous counts, a reviewing court must look to the applicable criminal statute to see what constitutes an "allowable 'unit' of prosecution" for an offense. *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995) (quoting *United States v. Song*, 934 F.2d 105, 108 (7th Cir. 1991)). In other words, the court must determine the minimum amount of activity for which criminal liability attaches." *Id*. Whether conduct may form the basis of one or more distinct offenses or units of prosecution is a question of legislative intent. *Sanabria v. United States*, 437 U.S. 54, 69-70 (1978). In that respect, the power to define an offense for purposes of the double jeopardy clause is vested with the legislative branch. *Brown v. Ohio*, 432 U.S. 161, 164 (1977); *see also Jones v. Thomas*, 491 U.S. 376, 381 (1989) (When multiple punishments are imposed at a single criminal trial, the protection afforded by the double jeopardy clause is limited to ensuring that sentencing courts do not exceed "the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments.").

In Count 1, Sergent was charged with second-degree attempted sexual assault of an unconscious person in violation of Wis. Stat. § 940.225(2)(d).[3] In Count 2, Sergent was

---

[3]  Wis. Stat. § 940.225(2)(d) provides that whoever has "sexual contact or sexual intercourse with a person who the defendant knows is unconscious" is guilty of a Class C felony.

19

charged with third-degree sexual assault in violation of Wis. Stat. § 940.225(3).[4]   The court of appeals determined that these charges were based on distinct acts by Sergent: attempting to sexually assault the victim while she was unconscious, then attempting to sexually assault the victim after she woke up and resisted.   Under Wisconsin law, "where there is a separate volitional act, there is a basis for a separate charge."   *State v. Bergeron*, 162 Wis. 2d 521, 535, 470 N.W.2d 322, 327 (Ct. App. 1991); *see also State v. Meehan*, 2001 WI App 119, ¶¶ 29B35, 244 Wis. 2d 121, 140-41, 630 N.W.2d 722, 732-33 (Ct. App. 2001); *State v. Cleveland*, 2000 WI App 142, ¶¶ 25-26, 237 Wis. 2d 558, 574, 614 N.W.2d 543, 551 (Ct. App. 2000).   Thus, courts have recognized that the Wisconsin legislature intended to allow separate punishments for each offense of sexual assault legitimately charged under Wis. Stat. § 940.225. *Bergeron*, 162 Wis. 2d at 535-36, 470 N.W.2d at 328; *Cleveland*, 2000 WI App. 142, & 26, 237 Wis. 2d at 574, 614 N.W.2d at 551.

Sergent has not shown that the state court erred in its interpretation of the applicable law or that, if his counsel had raised an objection to the counts at issue, the trial court would have been required to uphold the objection.   To the extent that Sergent's underlying double jeopardy claim rests on a state court interpretation of state law, federal habeas corpus review is not available.   *McCloud v. Deppisch*, 409 F.3d 869, 875-76 (7th Cir. 2005).   Apart from this, Count 1 and Count 2 pass the *Blockburger* test because each charge requires proof of an element that is not present in the other.

---

[4] Wis. Stat § 940.225(3) provides:  "Whoever has sexual intercourse with a person without the consent of that person is guilty of a Class G felony.  Whoever has sexual contact in the manner described in [Wis. Stat. § 940.225(5)(b)2. or 3.] with a person without the consent of that person is guilty of a Class G felony."

Accordingly, Sergent's assertion that his attorney was deficient for failing to argue this point is meritless.  Sergent has not shown that the charges actually were multiplicitous or that he was punished twice for the same offense.  A lawyer is not deficient for failing to raise a meritless objection.  *Northern v. Boatwright*, 594 F.3d 555, 561 (7th Cir. 2010).  This is not a basis to grant habeas relief.

### E.    Denial of the Right to Counsel

Sergent contends that the attorney who represented him on post-conviction review and direct appeal was deficient for failing to argue that he was denied the right to counsel when the state amended the charging instrument.  The court of appeals held that Sergent was not denied counsel during a critical stage of the proceedings and that counsel was not ineffective for failing to raise this issue:

> Sergent argues that the court erred in allowing the State to amend the information at a time when Sergent was unrepresented but had not affirmatively waived his right to counsel, and that successor counsel was ineffective for failing to challenge the amendment or even review the preliminary hearing transcript until shortly before trial. The original information had charged Count 1 as attempted second-degree sexual assault of an intoxicated person, with Count 2 stated to be a lesser-included offense of attempted third-degree sexual assault. The amended information changed Count 1 to a theory of attempted second-degree sexual assault of an unconscious person, and removed the reference to Count 2 being a lesser-included offense.
>
> A criminal defendant has a Sixth Amendment right to the effective assistance of counsel "at all critical stages of the trial." *See State v. Anderson*, 2006 WI 77, ¶ 67, 291 Wis. 2d 673, 717 N.W.2d 74. A stage in the proceeding may be deemed critical whenever the defendant may need counsel's assistance "to assure a meaningful defense." *Id.*, ¶ 68. The complete absence of counsel at a critical stage of the proceedings requires automatic reversal "only in cases

in which 'the deprivation of the right to counsel affected — and contaminated — the entire criminal proceeding.'" See id., ¶ 76 n. 50 (citing *Satterwhite v. Texas*, 486 U.S. 249, 257, 108 S. Ct. 1792, 100 L. Ed.2d 284 (1988)). Otherwise, a harmless error analysis may be employed. *Id.*, ¶¶ 74–76.

Sergent has not cited any case law holding that the amendment of an information following a preliminary hearing is a critical stage of the proceeding, and we are not persuaded that trial counsel's assistance at that stage was needed to assure a meaningful defense in this case. The amendment did not change the severity or factual basis for the charges Sergent would face at trial; it merely modified the State's legal theory to conform to the victim's preliminary hearing testimony that she was asleep when the assault began. Moreover, we cannot conclude that the entire proceeding was contaminated in light of trial counsel's testimony that, when he reviewed the preliminary hearing transcript, he did not see a basis to challenge the amendment, and the very same amendments could have been properly requested to conform to the evidence at trial. In short, Sergent has not identified anything counsel could have done differently had Sergent been represented at the time of the amendment.

*Sergent*, 2012 WI App 62, ¶¶ 16-18, 341 Wis. 2d 489, 815 N.W.2d 406.

Sergent argues that he was prejudiced by the lack of counsel because before the amendment he could only have been convicted of one of the attempted sexual assault charges. Sergent argues further that an attorney could have challenged the amended information on the grounds that attempted sexual assault charges in counts one and two violated the Double Jeopardy Clause. As noted above, however, Sergent has not demonstrated that the charges were multiplicitous or that a double jeopardy violation occurred. Based on this record, Sergent has not shown that counsel would have had a valid objection to make or that the state court's decision was unreasonable in deciding that his right to counsel was not violated when the amendment occurred. Sergent is not entitled to habeas relief on this claim.

22

### III.    Denial of an Evidentiary Hearing

Sergent argues that the circuit court erred when it declined to hold an evidentiary hearing on his ineffective assistance claims.  To obtain a hearing on postconviction review, a defendant must allege specific facts that, if true, would entitle him to relief.  *See* Wis. Stat. § 974.06; *see also, e.g., State v. Bentley*, 201 Wis. 2d 303, 310-11, 548 N.W.2d 50 (1996) (repeating the standard for obtaining a hearing on a postjudgment motion); *State v. Carter*, 131 Wis. 2d 69, 78, 389 N.W.2d 1 (1986) (same) (citing *Levasque v. State*, 63 Wis. 2d 412, 421, 217 N.W.2d 317 (1974)).  To the extent that Sergent claims he was denied a hearing in violation of state law, this claim is not cognizable in a federal habeas corpus proceeding.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  It is well established that errors in state collateral review cannot form the basis for federal habeas corpus relief.  *See Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) (collecting cases). Moreover, Sergent has not shown that any of his ineffective-assistance claims merit relief.  Thus, Sergent has not demonstrated that he was prejudiced by the circuit court's decision to deny relief without an evidentiary hearing or that he is entitled to further review of this issue here.

### IV.    Additional Relief from Sentence — Resentencing

As noted above, Sergent was originally sentenced to serve a total of 17 years (seven years' imprisonment followed by a ten-year term of extended supervision).  Sergent filed a motion for relief from this sentence, correctly pointing out that the maximum amount of extended supervision the statute would allow in his situation was 7½ years.  Although the circuit court

denied the motion, the court of appeals found that Sergent's term of extended supervision was excessive and vacated that portion of his sentence.  *See State v. Sergent*, 2013AP193-CR.

Sergent argues that the court of appeals erred by vacating and commuting his sentence; instead, says Sergent, the court should have remanded his case for a new sentencing proceeding. But as the state notes, Sergent cites no federal precedent that supports his contention that resentencing was required.  The court of appeals found that the remedy set forth in Wis. Stat § 973.13 applied.  Section 973.13 provides that:

> In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings.

Wis. Stat. § 973.13.

Although Sergent doesn't like this outcome, he hasn't established that the court of appeals erred in commuting his sentence; more importantly, Sergeant hasn't established that this question of state law is one for which federal habeas corpus review is available.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) (the writ of habeas corpus may not be used to press for a preferred interpretation of state law).

Sergent also claim that his original sentence was imposed in error because the circuit court relied upon an inapplicable sentencing guideline intended for the completed offense of second degree sexual assault, rather than for an attempt.  The court of appeals found that this claim could have been raised in a prior direct appeal or in a postconviction motion under Wis.

Stat § 974.02, and was therefore procedurally barred under *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994). *See State v. Sergent*, 2013AP193-CR.

*Escalona-Naranjo* holds that all issues not raised in a previous postconviction motion or appeal are foreclosed from being brought up in a subsequent postconviction motion unless the petitioner can demonstrate "sufficient reason" for the delay. 185 Wis. 2d at 185. The holding in *Escalona-Naranjo* is recognized as an independent and adequate state procedural rule that is sufficient to bar federal habeas corpus review. *See Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *Perry v. McCaughtry*, 308 F.3d 682, 692 (7th Cir. 2002); *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997). Accordingly, review of Sergent's claim concerning the inapplicable sentencing guideline is procedurally barred unless he can establish that an exception applies.

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice by showing the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Sergent makes no effort to demonstrate cause for his procedural default and the record discloses no actual prejudice. Because he does not come forward with evidence showing that he is actually innocent, Sergent likewise fails to show that he fits within the exception for fundamental miscarriages of justice in this instance. Under this exception, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 319-322 (1995)). Absent a valid exception, the procedural bar applies and Sergent is not entitled to

federal review of the proposed challenge to his sentence.  Because none of Sergent's other claims merit relief, his petition will be denied and this case will be dismissed.

## V.      Request for a Federal Court Evidentiary Hearing

As noted at the beginning of this order, Sergent asked this court to hold an evidentiary hearing on the claims in his petition, and this court preliminarily denied this request subject to reconsideration after the court had read all of the submissions from both sides. 28 U.S.C. § 2254(e)(1) allows for the possibility of an evidentiary hearing but creates a strong presumption against holding one.  A state court's determination of a factual issue is presumed correct, with the burden on the petitioner to rebut this presumption by clear and convincing evidence.  If a petitioner challenges the sufficiency of the evidentiary record adduced in the state court proceedings, then § 2254(f) puts the burden on the petitioner to produce that part of the state court record pertinent to a determination of the sufficiency of the evidence to support the challenged determination.

As can be inferred from the analysis above, and as I make explicit here, the factual determinations made at the state court level are correct and are based on an adequate factual record.  Sergent is not entitled to an evidentiary hearing on his petition.

## VI.     Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of

a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although Rule 11 allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, the court concludes that petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that:

(1)     Petitioner George H. Sergent's motion for an evidentiary hearing
        is DENIED.

(2)     Petitioner George H. Sergent's petition for a writ of habeas corpus
        is DENIED and this case is DISMISSED with prejudice.

(3)     A certificate of appealability is DENIED.  If petitioner wishes he
        may seek a certificate from the court of appeals under Fed. R. App.
        22.

Entered this 26th day of January, 2016.

                        BY THE COURT:

                        /s/

                        STEPHEN L. CROCKER
                        Magistrate Judge